IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TAMMY L. BLACK,               )
     Plaintiff             )
                           )
          v.               )       Civil Action No. 06-659
                           )
COMMISSIONER OF SOCIAL        )
SECURITY,                     )
     Defendant.            )

REPORT AND RECOMMENDATION

I.     <u>Recommendation</u>

It is respectfully recommended that the defendant's motion for summary judgment (Docket No.14) be granted; that the decision of the Commissioner of Social Security be affirmed, and that judgment be entered accordingly.

II.     <u>Report</u>

Presently before the Court for disposition are cross motions for summary judgment.

On May 18, 2006, Tammy L. Black, by her counsel, filed a complaint pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§405(g) and 1383(c)(3) for review of the Commissioner's final determination disallowing her claim for a period of disability or for disability insurance benefits and supplemental security income benefits under Sections 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C. §§416(i) and 423 and 1381 cf.

The plaintiff filed an application for disability and supplemental security income benefits on October 28, 1999 (R.58-60, 467-468). Benefits were denied on June 26, 2000 (R39-42, 471-

475).  The plaintiff filed a second application for benefits on October 28, 2003 (R.61-63, 476-479) and benefits were denied on February 25, 2004 (R.43-46, 481-484). On February 27, 2004 , the plaintiff requested a hearing (R.47), and pursuant to that request a hearing was conducted on November 22, 2004 (R.514-571).  In a decision filed on March 23, 2005, an Administrative Law Judge denied benefits (R.15-29).  On May 18, 2005, the plaintiff requested reconsideration of this determination (R.13-14), and upon reconsideration, and in a decision dated March 31, 2006, the Appeals Council  affirmed the prior decision (R.7-10). The instant complaint was filed on May 18, 2006.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his/her burden of demonstrating that he/she was disabled within the meaning of the Social Security Act.  Richardson v. Perales, 402 U.S. 389 (1971); Adorno v. Shalala, 40 F.3d 43 (3d Cir. 1994).

It is provided in 42 U.S.C. Section 405(g) that:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)." Richardson v. Perales, supra., at page 401; Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999).

At the hearing held on November 22, 2004 (R.514-571), the plaintiff appeared with a paralegal representative (R.516), and testified that she was born on February 25, 1962 (R.520);

that she is five foot three inches tall and weighs three hundred thirty pounds (R.521); that she completed high school (R.528); that she had a worker's Compensation claim which she settled (R.528); that she is receiving public assistance and food stamps (R.527); that she worked answering phones, filing, typing, as a cashier and home health aide (R.531-534) and that she last worked in November 2001 when she was injured at work (R.529-530).

The plaintiff also testified that she does not drive because she fears suffering an anxiety attack (R.525-526, 555); that she experiences low back pain, depression and panic attacks (R.535, 552, 557, 561); that she takes medication for diabetes, depression, high blood pressure and pain (R.541-544, 548, 562); that she attended physical therapy (R.535); that she has difficulty standing and can only stand for about ten minutes, sit for about a half hour and lift five pounds (R.536-538) and that her doctors have not restricted her activities (R.540).

At the hearing a vocational expert was called upon to testify (R.566-571). He categorized the plaintiff's prior work as medium to heavy (R.568).  The witness was asked to assume an individual who could only lift up to twenty pounds occasionally and ten pounds frequently and who could only stand or walk for two hours during an eight hour working day, and testified that such an individual could perform some of the plaintiff's prior work (R.568). He was further asked to assume an individual who was limited to sedentary work performing simple tasks, and responded that while such work did not comport with the plaintiff's prior work, there were a large number of jobs an individual of the plaintiff's age, education and work experience could perform in the national economy (R.568-569). The witness was asked to assume the individual was limited to a sedentary job with the ability to change positions or move around and testified that there were still a large number of jobs such an individual could perform (R.570). However, if the

individual had to miss two hours of work a day or three days of work a month, the witness

testified she would not be employable (R.570-571).

The issue before the Court for immediate resolution is a determination of whether or not

there is substantial evidence to support the findings of the Commissioner that the plaintiff is not

disabled within the meaning of the Act.

The term "disability" is defined in 42 U.S.C. Section 423(d)(1)(A) as:

> inability to engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result in
> death or which has lasted or can be expected to last for a continuous period of not
> less than 12 months....

For purposes of the foregoing, the requirements for a disability determination are provided

in 42 U.S.C. Section 423(d)(2)(A):

> An individual shall be determined to be under a disability only if his physical or
> mental impairment or impairments are of such severity that he is not only unable to
> do his previous work but cannot, considering his age, education, and work
> experience, engage in any other kind of substantial gainful work which exists in the
> national economy, regardless of whether such work exists in the immediate area in
> which he lives, or whether a specific job vacancy exists for him, or whether he
> would be hired if he applied for work.  For purposes of the preceding sentence ...
> "work which exists in the national economy" means work which exists in
> significant numbers either in the region where such individual lives or in several
> regions of the country.

A "physical or mental impairment" is "an impairment that results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable

clinical and laboratory diagnostic techniques."  42 U.S.C. Section 423(d)(3).  These provisions

are also applied for purposes of establishing a period of disability.  42 U.S.C. Section

416(i)(2)(A).

It is provided in 42 U.S.C. Section 1382c(a)(3) that:

(A)... an individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

(B) For purposes of subparagraph (A), an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

\* \* \*

(D) For purposes of this paragraph, a physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

It is also provided that:

Notwithstanding the provisions of subparagraphs (A) through (E), an individual shall also be considered to be disabled for purposes of this subchapter if he is permanently and totally disabled as defined under a State plan approved under subchapter XIV or XVI of this chapter as in effect for October 1972 and received aid under such plan (on the basis of disability) for December 1973 (and for at least one month prior to July 1973), so long as he is continuously disabled as so defined.

42 U.S.C. Section 1382c(3)(F).

Pursuant to the authorization contained in 42 U.S.C. Section 1382c(3)(D), the

Commissioner has promulgated certain regulations for the implementation of the Supplemental

Security Income Program.  While these statutory provisions have been regarded as "very harsh,"

nevertheless, they must be followed by the courts.  NLRB v. Staiman Brothers, 466 F.2d 564 (3d

Cir. 1972); Choratch v. Finch, 438 F.2d 342 (3d Cir. 1971); Woods v. Finch, 428 F.2d 469 (3d

Cir. 1970). Thus, it must be determined whether or not there is substantial evidence in the record to support the conclusion of the Commissioner that the plaintiff is not disabled within the meaning of the Social Security Act.

For this purpose, certain medical evidence was reviewed by the Commissioner.

The plaintiff was treated by Dr. M.B. Krafty between March 16, 1995 and May 19, 1998 for anxiety which appeared to improve with medication (R.185-195).

In a report of a physiatric evaluation conducted on December 16, 1999, Dr. Richard S. Kaplan noted the plaintiff's abilities to be within totally normal limits except for her obesity. It was concluded that she could lift, sit, stand and walk without limitations (R.206-210).

In a report of a psychological evaluation conducted on December 22, 1999, Frank J. Provenzano, Ph.D. diagnosed anxiety and depression related to the plaintiff's pain problems. It was noted that the plaintiff would be unable to respond to deadlines or maintain a regular work schedule (R.196-205).

After reviewing the medical evidence and in a residual functional capacity assessment completed on January 7, 2000, it is noted that the plaintiff could occasionally lift fifty pounds, frequently lift twenty-five pounds, and stand, walk or sit for about six hours (R.112-117).

In a report of a January 4, 2000 psychological review, Raymond F. Dalton, Jr., Ph.D. diagnosed a depression disorder imposing moderate to no limitations on the plaintiff's functioning (R.211-223).

The plaintiff was hospitalized at Uniontown Hospital from January 13, 2002 through January 17, 2002 for left leg cellulitis. She was placed on medication and a low fat-high fiber diet (R.224-232).

In a report of a neurological evaluation conducted on February 7, 2002 marked obesity and mild left ankle cellulitis were noted and disc surgery was recommended (R.233-234).

The plaintiff had a neurological evaluation performed on May 9, 2002 at the Pittsburgh Neurosurgery Associates where some L5-S1 degenerative disc changes without disc herniation were observed. It was believed that the plaintiff was experiencing a diffuse non-specific pain syndrome for which no-surgical pain management was suggested. The examiner did not believe work would aggravate her situation (R.235-237).

The plaintiff was hospitalized at Uniontown Hospital from October 18, 2002 through October 22, 2002 for cellulitis and treated with antibiotics (R.306-312).

The plaintiff was treated at the Uniontown Hospital emergency room between March 25, 2002 and December 29, 2002 for pulmonary congestion, cellulitis of the legs, bronchitis, edema and possible reflux esophagitis (R.313-360).

The plaintiff received therapy at Health First Medical between December 3, 2001 and May 13, 2002. On January 30, 2002, it was reported that she could perform light work. On January 11, 2003, the plaintiff was said to be able to work part-time at light duty (R.238-305).

The plaintiff received physical therapy for low back pain at Holistic Physical Therapy between September 28, 2002 and May 9, 2003. The plaintiff's treatment was terminated for non-compliance (R.361-395).

On August 20, 2003, the plaintiff was awarded Worker's Compensation lump sum benefits as a result of a November 28, 2001 work related low back injury (R.78-81).

The plaintiff was treated at HealthSouth between August 19, 2002 and August 29, 2003 for morbid obesity, probable sleep apnea, hypertension, smoking and lumbar disc disease. She was

placed on pain medication including epidural injections and attended a monthly pain clinic (R.396-413).

The plaintiff was treated at the Jefferson Pain and Rehabilitation Center between June 12, 2003 and November 11, 2003 for lower back pain and spasms. She was treated with medication and paravertebral nerve blocks (R.414-425).

The plaintiff was hospitalized at Highlands Hospital from December 2, 2003 through December 6, 2003 for severe cellulitis of both legs. Medication was prescribed (R.497-513).

In a report of a psychological evaluation conducted on January 27, 2004, Lanny Detore, Ed.D. diagnosed a depressive disorder related to the plaintiff's chronic pain syndrome, lack of employment, medical difficulties and a panic disorder without agoraphobia. He recommended psychotherapy and a possible medication change. The plaintiff's restrictions were mild to moderate.  A psychiatric residual capacity review concluded that the plaintiff could meet the mental demands of competitive work (R.426-448).

After reviewing the medical evidence and in a residual functional capacity assessment completed on February 19, 2004, it was noted that the plaintiff could occasionally lift twenty pounds, frequently lift ten pounds;  stand or walk for at least two hours and sit for about six hours (R.449-458).

In a report dated August 8, 2004 covering four visits since April 27, 2004, Alvaro Barriga, Ph.D. diagnosed panic attacks with agoraphobia (R.461).

On September 5, 2003, the Pennsylvania Department of Welfare diagnosed lumbar disc disease and concluded that the plaintiff was temporarily disabled for the period from November 28, 2001 through September 23, 2004 (R.459-46).

The plaintiff was treated at the Jabbour Medical Center between January 14, 2004 and September 28, 2004 (R.462-465).

In an updated counseling report dated November 16, 2004, continued panic disorder and agoraphobia were noted. The plaintiff was said to be making favorable progress and her number of panic attacks had decreased (R.466).

The plaintiff last met the special earnings requirement of the Act on December 31, 2004 (R.19).

The relevant regulations require explicit findings concerning the various vocational factors which the Act requires to be considered in making findings of disability in some cases. These regulations, published at 20 C.F.R. §§404.1501, et seq., set forth an orderly and logical sequential process for evaluating all disability claims. In this sequence, the Administrative Law Judge must first decide whether the plaintiff is engaging in substantial gainful activity. If not, then the severity of the plaintiff's impairment must be considered. If the impairment is severe, then it must be determined whether he/she meets or equals the "Listings of Impairments" in Appendix 1 of the Regulations which the Commissioner has deemed of sufficient severity to establish disability. If the impairment does not meet or equal the Listings, then it must be ascertained whether he/she can do his/her past relevant work. If not, then the residual functional capacity of the plaintiff must be ascertained, considering all the medical evidence in the file. The finding of residual functional capacity is the key to the remainder of findings under the new regulations. If the plaintiff's impairment is exertional only, (i.e. one which limits the strength he/she can exert in engaging in work activity), and if his/her impairment enables him/her to do sustained work of a sedentary, light or medium nature, and the findings of age, education and work experience, made by the

Administrative Law Judge coincide precisely with one of the rules set forth in Appendix 2 to the regulations, an appropriate finding is made.  If the facts of the specific case do not coincide with the parameters of one of the rules, or if the plaintiff has mixed exertional and non-exertional impairments, then the rules in Appendix 2 are used as guidelines in assisting the Administrative Law Judge to properly weigh all relevant medical and vocational facts.

Based on the evidence presented, the Commissioner concluded:

Born on February 25, 1962, the claimant is a 43-year-old individual with a high school education. Her past work experience includes employment as a home health care/nurse's aide, receptionist, and cashier/clerk. She alleges that she became disabled on December 15, 2001, due to degenerative disc disease, depression, obesity, panic attacks, diabetes, and cellulitis...

With regard to the claim for a period of disability... the claimant ... is insured for disability benefits through December 31, 2004. Therefore, the claimant must establish disability on or prior to this date.

* * *

The medical evidence indicates that the claimant has obesity; degenerative lumbar disc disease; diabetes mellitus;  depression; and anxiety, impairments that are "severe" ... but not "severe" enough to meet or medically equal ... the impairments listed....

* * *

Under the *Clinical Guidelines* ... the claimant is extremely obese.  Therefore, the Administrative Law Judge will consider the adverse effect of the claimant's obesity when evaluating the evidence...

Regarding her lumbar impairment, the objective medical evidence of record does not show compromise of any nerve root or the spinal cord in the lumbar spine, appropriate evidence of nerve root compression, or pseudoclaudication resulting in an inability to ambulate effectively ... even when considering her obesity.

The claimant has a history of cellulitis in her lower extremities, which responded well to treatment and would not impose any significant vocational limitations for 12 consecutive months ...

10

The claimant has not received any specialized mental health treatment or counseling until ... shortly after she file[d] her request for a hearing...  Although ... assert[ing disabling] anxiety ... she was able to work [during that time period]...

[T]estimony that suggests that she had greater limitations or was not able to perform any sustained work activity due to her mental impairments is inconsistent with the evidence [of record] and not fully credible.

* * *

The Administrative Law Judge ... finds that the claimant does not have an impairment, or combination of impairments, equal in severity to any listed impairments even when considering the claimant's obesity. No treating or examining physician has reported objective findings equivalent in severity to the criteria of any listed impairment.

* * *

As with her exaggerated psychological complaints and reports of cellulitis ... the Administrative Law Judge finds that the claimant's testimony and allegations are not fully credible as to the nature and extent of her limitations, and are credible only to the extent that her testimony supports a finding that the claimant retains the physical ability to perform a wide range of light lifting work, with further accommodations for her vertebrogenic and obesity problems.

* * *

The undersigned finds the claimant retains the following residual functional capacity: she can lift and/or carry 20 pounds occasionally and 10 pounds frequently; can sit for six hours in an eight hour workday, 30 minutes at one time; can stand and/or walk for two hours in an eight hour workday, 15 minutes at one time; and is limited to simple work that is routine with one to three step tasks.

* * *

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, educational background, work experience, and residual functional capacity, she is capable of making a successful adjustment to work that exists in significant numbers in the national economy ...

For all the foregoing reasons, the Administrative Law Judge concludes that the claimant retains the capacity for work that exists in significant numbers in the national economy and is not under a "disability" as defined in the Social Security Act... (R.15-28).

11

The record demonstrates that the plaintiff has a number of ailments none of which individually or in combination result in her inability to engage in gainful employ. Rather, the record suggests that there are a large number of positions she could occupy within her residual functional limitations, and for this reason, the conclusion of the Commissioner is supported by substantial evidence.

Summary judgment is appropriate where there are no material issues of fact in dispute and the movant is entitled to judgment as a matter of law. Biener v. Calio, 361 F.3d 206 (3d Cir. 2004). In the instant case, there are no material factual issues in dispute, the decision of the Commissioner is supported by substantial evidence, and judgment should be entered for the defendant and against the plaintiff. For this reason, it is recommended that the defendant's motion for summary judgment be granted, and that the decision of the Commissioner be affirmed.

Within thirteen (13) days after being served with a copy , any party may serve and file written objections to the Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.


                                        Respectfully submitted,

Dated: January 3, 2007                  s/ Robert C.  Mitchell,
                                        United States Magistrate Judge